# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Consumer Data Partners, LP, successor by merger to Data Partnership Group, LP, as Plan Sponsor; and the Data Partnership Group, LP Health and Welfare Benefits Plan, | ) ) ) ) ) | CIVIL ACTION NO: _____ |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| Agentra LLC; David Lindsey; Insurety Capital LLC; Christopher James Pagnanelli; and Does 1 through 10 | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

**COMES NOW** Consumer Data Partners, LP, successor by merger to Data Partnership Group, LP, as Plan Sponsor ("CDP"), and the Data Partnership Group, LP Health and Welfare Benefits Plan ("DPG Plan") (individually, CDP and DPG Plan are each a "Plaintiff"; collectively, "Plaintiffs"), by and through their undersigned counsel, files this Complaint against Defendants, Agentra, LLC ("Agentra"), David Lindsey ("Mr. Lindsey"), Insurety Capital LLC ("Insurety"), Christopher James Pagnanelli ("Mr. Pagnanelli"), and Does 1 through 10 (the "Doe Defendants") (individually, Agentra, Insurety, Mr. Lindsey, Mr. Pagnanelli, and the

02409810-1

Doe Defendants are each a "Defendant"; collectively "Defendants"), respectfully showing the Court the following:

<strong>PARTIES, JURISDICTION, AND VENUE</strong>

1.     CDP is a Georgia limited partnership, operating the DPG Plan at CDP's principal place of business at 4279 Roswell Rd NE, Suite 208, Box 371, Atlanta, Georgia 30342.

2.     Upon information and belief, Agentra is a Texas limited liability company, and can be served with process at its principal place of business, at 4201 Spring Valley Road, Suite 1500, Dallas, Texas 75244.

3.     Upon information and belief, Mr. Lindsey is a resident of Dallas, Texas, and can be served with process at 4201 Spring Valley Road, Suite 1500, Dallas, Texas 75244.

4.     Upon information and belief, Insurety is a Delaware limited liability company with its principal place of business located in Miami, Florida, and can be served with process on its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

5.     Upon information and belief, Mr. Pagnanelli is a resident of Fort Lauderdale, Florida, and can be served with process at 115 NE 3rd Avenue, Apt. 608, Fort Lauderdale, Florida 33301.

6.     Upon information and belief, the Doe Defendants are persons or entities that are liable to Plaintiffs for damages arising from actions consistent, and/or in concert, with those committed by Agentra, Mr. Lindsey, Insurety, and Mr. Pagnanelli as set forth herein, including, but not limited to, the allegations and claims concerning ERISA breaches and correlated allegations, claims, and damages alleged herein. The exact identities of the Doe Defendants are unknown but will be added when ascertained.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331(a), because this action arises under the laws of the United States, namely ERISA. This Court further has subject matter jurisdiction pursuant to 29 U.S.C. § 1132 (e)(1), because the district courts of the United States have exclusive jurisdiction over civil actions under this title brought by a participant, beneficiary, fiduciary, or any person referred to in 9 U.S.C. § 1021(f)(1).

8.     The Court has subject matter jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367 because the state law claims arise out of a common nucleus of operative facts as the federal law claims.

9.     The Court further has subject matter jurisdiction over this matter because there is complete diversity between Plaintiffs and Defendants, and the amount in question is in excess of $75,000.

10.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because Plaintiff resides in this District, or the breach took place in this District. Venue is further proper in this District under 29 U.S.C. § 1391 (b) because this is a District where a substantial part of the events or omissions giving rise to the claim occurred, or a District in which any Defendant is subject to the court's personal jurisdiction with respect to this action.

## FACTS COMMON TO ALL COUNTS

11.     Upon information and belief, Mr. Pagnanelli served as Insurety's Chief Executive Officer between January 2018 and April 4, 2019.

12.     Upon information and belief, Mr. Lindsey is an officer and beneficial owner of Agentra, intimately involved in all transactions and operations concerning Agentra underlying this action.

13.     Upon information and belief, Mr. Lindsey knowingly received multiple payments of Plan Assets, defined below, that accrued for his personal financial benefit.

14.     CDP's primary business is the capture, segregation, aggregation, and sale to third-party marketing firms of electronic data generated by limited partners who transmit such data to CDP. This was the same primary business of DPG prior to its merger into CDP.

15.    As a technology start up, the primary target for individuals likely to join DPG (and CDP) and to contribute their electronic data for these business purposes are individuals whose primary jobs are as sole-proprietors or independent contractors working multiple engagements in today's "gig" economy. Consequently, those target partners would have limited access to affordable health coverage and likely are middle-income earners looking for additional income and better, more affordable health coverage for themselves and their families.

16.    To attract, retain, and motivate such individuals in support of this primary business purpose, DPG established the DPG Plan as a self-insured group employee health and welfare benefit plan known as the Data Partnership Group, LP Health and Welfare Benefits Plan (the "Benefits Plan") for its common law employees and eligible limited partners (the "Participants") under the Employee Retirement Income Security Act of 1974 ("ERISA"). CDP, as successor by merger to DPG, is the Plan Sponsor under ERISA. As Plan Sponsor, CDP is a Benefits Plan fiduciary under ERISA.

17.    The Benefits Plan includes six (6) separate health plan designs, identified as MEC, MEC HP, MEC HP3, HSP3, HSP6, HSP9, as well as two (2) supplemental plan designs, identified as CAT50 (ages 18 to 34), and CAT50 (ages 35 to 64) (collectively, the "Plans").

18.     Each of the Plans is available to a Participant enrollee at four different levels-employee only ("EE" or "Member"), employee plus spouse ("EE + SP" or "Member + Spouse"), employee plus children ("EE + Children" or "Member + Children"), and family ("Family").

19.     A number of third-party vendors are engaged to administer the Benefits Plan.

20.     Pursuant to a Services Agreement dated as of January 1, 2019, by and between CDP's predecessor-in-interest, DPG, and Agentra (the "DPG-Agentra Agreement"), CDP hired Agentra, a benefits administration company, to provide enrollment services for the Benefits Plan. A true and correct copy of the DPG-Agentra Agreement is attached to this Complaint as Exhibit "A" and is incorporated herein by reference.

21.     Pursuant to the DPG-Agentra Agreement, Agentra was required to provide specified "Services" relevant to the Benefits Plan and the Participants in exchange for specified "Fees", the Services including the following:

1. Enrollment Services. Agentra shall provide an online enrollment platform through which independent licensed agents may enroll eligible Plan participants in the Plan. Agentra shall keep adequate records verifying all such enrollments and make them available upon request to Client. Agentra shall store accurate and complete enrollment information on all Plan participants of Client as a system of record. Agentra shall transmit such records to a designated Third Party Administrator selected by Client and communicated to Agentra by Client for claims administration services. Agentra will further execute the Business Associate Agreement, hereby incorporated by reference to

02409810-1                                    6

this Agreement, attached as Schedule C. Agentra shall not enroll any new Plan participants as of October 1, 2019.

2. Participant Services. Agentra will provide customer service to all Plan participants with respect to billing, provider lookups, benefit tier changes, advocacy, prescription drug assistance, general questions, and ID cards. Calls regarding claims or unrelated matters shall be referred to the Third Party Administrator or other appropriate party.

3. Collection Services. All Plan participant contributions received by Agentra through its online platform shall be deposited in a separate account at a nationally recognized financial institution. Upon Client's request, Client shall have viewing access rights (to include rights to access and view all account statements) for such separate account. Under no circumstances may Agentra commingle Plan contributions with any other funds or cash accounts of Agentra or any of its other clients. All such Plan participant contributions, unless otherwise stated in the Agreement, will be transmitted to the Client designated Third Party Administrator within a 45- 60 days cycle.

4. All Services provided under this Agreement shall be in accordance with Client's standard procedures and responses which are attached hereto and incorporated herein as SCHEDULE D.

5. For purposes of this Agreement, Agentra shall provide Services with respect to the employer-sponsored group health plans of Client, which shall collectively be referred to in this Agreement as the "Plan".

Agreement, Schedule A. Statement of Work.

22.     Under the DPG-Agentra Agreement, Agentra was responsible for ensuring that all Participant contribution payments (which are Benefits Plan assets under ERISA), less Agentra's specified Fees, were transmitted to Hawaii Mainland Administrators, LLC, DPG's licensed third-party administrator (the "TPA"), for

02409810-1

7

deposit into a segregated account maintained by the TPA as trustee (the "Trust Account") for the benefit of the Benefits Plan.

23.     The monthly Participant contributions funding the Trust Account are necessary to pay service fees for other Benefits Plan vendors and fund claims from health care providers to Participants and pharmacies providing prescription drugs to Participants for goods and services covered under the Benefits Plan.

24.     The Benefits Plan is a self-insured plan, and the monthly contributions create the assets with which the Benefits Plan (through the TPA) pays medical claims, pharmaceutical claims, as well as other Benefits Plan vendor fees and costs, all of which are covered by the Benefits Plan.

25.     As consideration for Agentra's providing the Services, the DPG-Agentra Agreement provided that Agentra would be entitled to compensation defined in the DPG-Agentra Agreement as "Fees," and identified in Schedule B of the DPG-Agentra Agreement.

26.     Under the DPG-Agentra Agreement, Agentra had discretionary authority or control with respect to Plan assets, such as the cash contributions of Plan participants. Upon information and belief, Agentra exercised actual discretionary authority or control over Plan assets by deducting its fees from the monthly Plan contributions before transmitting the balance to the TPA.

27.    Under ERISA, Agentra's discretionary authority and control with respect to Plan assets made it a fiduciary to the Plan.  29 U.S.C. §§ 1104(a)(1)(A) requires that a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

28.    Rather than discharge its fiduciary duties to the Plan in a manner consistent with lawful standards, Agentra grossly overcharged the Plan and, by extension its participants, for its "services." Agentra, along with its owner, affiliates, subsidiaries, and subcontractors retained an average of approximately 60% and as much as 67% of monthly program fees paid by Plan participants.  Claims funding averaged approximately 25% of monthly program fees, leaving an average of only 15% of said fees to cover all other Plan and Plan vendor costs, including claims adjudication, eligibility and benefits administration, provider network access, plan design, and vendor management.

29.    While Agentra began providing its services to the Plan shortly after the Plan's inception, the DPG-Agentra Agreement was not finalized until November 4, 2019 due solely to the refusal of Agentra to provide its fee schedule despite repeated

02409810-1                                            9

requests beginning as early as January 2019. Agentra did not disclose to the Plan the breakdown of its discretionary allocation of program fees until November 1, 2019. When the specified Fees were questioned, Agentra's counsel explained the specified Fees inserted in Schedule B were a range of Fees charged depending on various factors in Agentra's exclusive control. The full scope of Agentra's program fees only became known to the Plan and its other vendors through legal discovery in the bankruptcy of American Workers Insurance Services, Inc. ("AWIS"), an Agentra affiliate.

30.    As set forth above, the DPG-Agentra Agreement required Agentra to deposit all Benefits Plan participant contributions it received into a separate account at a nationally recognized financial institution chosen solely by Agentra, and to provide CDP viewing access rights for such separate account. The DPG-Agentra Agreement forbade Agentra's commingling of any Benefits Plan contributions with any other funds or cash accounts of Agentra or any of its other clients.

31.    As contemplated and understood by the terms of the DPG-Agentra Agreement, without proper transmission of the monthly Plan contributions to the TPA, there would be no funds available to pay out to Plan Participants for properly submitted claims required to be paid out by Plaintiffs.

32.    Without CDP's knowledge or consent, and in direct violation of the DPG-Agentra Agreement, Agentra hired a third-party, AWIS – essentially

02409810-1                                    10

subcontracting to AWIS some or all of Agentra's obligations to Plaintiffs, including, but not limited to, the collection and transfer of participant contributions, such that AWIS would then provide the Services under the DPG-Agentra Agreement for the Benefits Plan.

33.   Upon information and belief, at the time Agentra hired AWIS, Agentra owned AWIS with ultimate, beneficial control of both entities maintained by Mr. Lindsey.

34.   Therefore, upon information and belief, during all relevant time periods underlying the facts set forth herein, Mr. Lindsey held a direct or indirect ownership interest in both AWIS and Agentra.

35.   Rather than maintain a separate account for Benefits Plan contributions received by it, AWIS commingled the monthly Benefits Plan contributions with other monies paid to AWIS. From this commingled account, AWIS transmitted some or all of the Benefits Plan contributions it collected pursuant to its agreement with Agentra to Insurety and Mr. Lindsey. Upon information and belief, some or all of these sums were Benefits Plan contributions, Plan Assets of the Benefits Plan under ERISA.

36.   Therefore, in direct violation of the contractual obligations to CDP and fiduciary duties to Plaintiffs, Agentra and Mr. Lindsey, both directly and through Agentra's subcontractor AWIS, collected, commingled, mismanaged, and illegally

diverted for their own use Benefits Plan contributions paid by plan participants to continue their health coverage under the Plan, and to ensure that funds existed to pay medical expenses of these and other participants of the Plan (the "Withheld Plan Contributions").

37. The Withheld Plan Contributions constitute Benefits Plan assets as defined by ERISA.

38. For example, the Withheld Plan Contributions constituted funds that Plan Participants paid directly to Defendants that should have been transmitted to the TPA and the Trust Account for use to pay other Benefits Plan vendors as well as medical claims, pharmaceutical claims, as well as other Benefits Plan vendor fees and costs, all of which are covered by the Benefits Plan, from providers of Plan Participants.

39. Upon information and belief, the Benefits Plan contribution payments are included in the transfers from AWIS to Agentra, Insurety and Mr. Lindsey. To the extent any Benefits Plan assets have been transferred to accounts owned or controlled by Agentra, Insurety and Mr. Lindsey, then Agentra, Insurety and Mr. Lindsey also undertook fiduciary duties as to those Benefits Plan assets under ERISA.

40. Defendants' withholding of the Withheld Plan Contributions is in direct violation of their fiduciary duties and the terms of the DPG-Agentra Agreement.

41.     Based on correspondence between and among Defendants and CDP, Defendants are unable to account – and refuse to account – for the Withheld Plan Contributions owed Plaintiffs.

42.     AWIS filed bankruptcy on October 14, 2019. Shortly after that filing, DPG initiated an adversary proceeding to recover the Withheld Plan Contributions. Over the course of discovery in the adversary proceeding, Plaintiffs first became aware of the facts alleged in Paragraphs 33 through 41.

43.     The urgency to conclude the contract negotiations with Agentra which began in January 2019 became far more urgent with this bankruptcy filing. In large measure because of this new urgency, the Plan was required to accept unfavorable contract terms in the DPG-Agentra Agreement, specifically the specified Fees in Schedule B, which were not disclosed until November 1, 2019. Without a written agreement with Agentra, the Plan would face substantial hurdles in seeking to recover the Withheld Contributions from AWIS through the adversary proceeding in the bankruptcy.

44.     Shortly after discovering the tortious conduct of Agentra and Mr. Lindsey through discovery materials produced in the AWIS bankruptcy, the DPG Plan terminated the DPG-Agentra Agreement on January 3, 2020. A true and correct copy of the termination notice is attached hereto and incorporated herein as Exhibit B.

02409810-1                                        13

45.     Upon information and belief, all Defendants had active or immutable knowledge and awareness that withholding of the Withheld Plan Contributions is in direct violation of fiduciary duties and the terms of the DPG-Agentra Agreement.

46.     For example, Insurety and AWIS agreed between themselves to use Association Health Care Management, Inc. ("AHCM"), a licensed third-party administrator, to collect insurance premiums and other fees paid by policyholders and to distribute those funds to the appropriate person or entity.

47.     Insurety described the obligations owed to it by AHCM as requiring AHCM to collect the premium payments and on a monthly basis, paying to Insurety Plan Assets collected during the relevant reporting period, and providing Insurety with collections reports.

48.     Some or all of the above-described funds were, in fact, owed to the DPG Plan.

49.     Insurety had knowledge, awareness, and/or belief that AWIS had a number of reporting irregularities in connection with funds commingled with those owed to the DPG Plan.

50.     Under the terms of its contract with AWIS, when Insurety purchased commissions from AWIS, Insurety obtained from AWIS all of AWIS's purported right, title, and interest, in the commissions.

51.     These commissions were commingled with those funds Agentra and/or AWIS owed to the DPG Plan.

52.     Insurety took the position that the other agreements between AWIS, AHCM, and Insurety made the commissions Insurety's exclusive personal property, for which AWIS and AHCM were only custodians.

53.     Under ERISA, the discretionary authority and control with respect to Plan assets exercised by Insurety and Mr. Pagnanelli's made them fiduciaries to the Plan. 29 U.S.C. §§ 1104(a)(1)(A) requires that a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

54.     Upon information and belief, examples of Insurety's self-dealing of the commingled, misappropriated, mismanaged, and diverted funds have been admitted by Insurety in court filings it has made against Mr. Pagnanelli, citing his actions as Insurety's Chief Executive Officer between January 2018 and April 4, 2019.

55.     Upon information and belief, Insurety, through Mr. Pagnanelli acting as its agent and on its behalf as CEO of Insurety, engaged in self-dealing and self-

interested transactions contrary to the fiduciary duties owed the DPG Plan and Plan Participants.

56. Upon information and belief, Insurety, through Mr. Pagnanelli acting as its agent and on its behalf as CEO of Insurety, had constructive knowledge and awareness of the relationship between AWIS and Agentra, namely, that Mr. Lindsey held a direct or indirect ownership interest in AWIS and Agentra.

57. Upon information and belief, Insurety, through Mr. Pagnanelli acting as its agent and on its behalf as CEO of Insurety, assumed a high "concentration risk" by advancing significant funds to AWIS and Agentra, but also, at the same time, upon information and belief, pursued a beneficial business relationship with Landon Jordan ("Mr. Jordan"). Upon information and belief, at some point in time after Agentra sub-contracted with AWIS, Mr. Lindsey sold his interest in AWIS to Mr. Jordan.

58. Upon information and belief, Insurety, through Mr. Pagnanelli acting as its agent and on its behalf as CEO of Insurety, engaged in self-dealing and self-interested actions including implementing a nine-month commission advance program to AWIS contrary to the fiduciary duties owed the DPG Plan and Plan Participants.

59. Therefore, upon information and belief, Insurety, Agentra and Mr. Lindsey had knowledge and awareness that the commissions described above were

02409810-1                                    16

commingled with Plan Assets and each such Defendant exercised control or discretion over the commingled funds which included Plan Assets.

60.  Upon information and belief, Insurety had knowledge and awareness that purchasing the commissions did not cause Plan assets to become the lawful property of Insurety, inasmuch as they were commingled with and owed to the DPG Plan.

61.  Upon information and belief, a substantial portion of AWIS/ACHM's payments to Insurety necessarily included Benefits Plan monthly contributions owed to the DPG Plan because AWIS/ACHM did not have sufficient funds to make the payments to Insurety without using Plan Assets, namely the Benefits Plan monthly contributions.

62.  As further example, Insurety has made admissions in its proceedings against its former CEO Mr. Pagnanelli, demonstrating further examples of "control" over commingled, misappropriated, mismanaged, and diverted funds owed the DPG Plan.

63.  Insurety purchased certain payment streams from AWIS which necessarily included Benefits Plan contributions.

64.  Insurety considered AWIS/ACHM to be holding receipts in trust, and further sought to impose a trust over funds in the AWIS/ACHM possession.

65.    Insurety had knowledge and awareness that AWIS/ACHM commingled, misappropriated, mismanaged, and diverted funds that AWIS/ACHM received, including Benefits Plan contributions owed the DPG Plan.

66.    Plaintiffs are entitled to all of Participants' contribution payments, including the Withheld Plan Contributions and any other unlawfully withheld payments, less any reasonable fees owed Agentra and/or AWIS.

67.    Each Defendant received millions of dollars from Plan Participants paid by these individuals for the sole purpose of funding the self-insured group health plan through which the Plan Participants received health coverage. With full knowledge of these facts, Defendants kept all of the Plan Assets from Participants instead of transmitting the Plan Assets to the TPA as was each Defendant's fiduciary obligation.

68.    Each Defendant made representations to CDP that funds would be transmitted to the TPA as was done previously.

69.    Upon information and belief, each Defendant's representations to CDP that funds would be transmitted to the TPA as was done previously was made with knowledge that the funds would not be transmitted to the TPA.

70.    Upon information and belief, AWIS/AHCM paid over $30,000,000 to Defendants from commingled funds which included Plan Assets and other funds. Those payments of commingled funds also included an unknown amount of

02409810-1                                   18

excessive fees charged by Agentra, its subsidiaries and affiliates to Plan participants, all in direct violation of ERISA and Agentra's fiduciary duties to the Plan. The Plan currently cannot calculate the total amount of excessive fees paid to Agentra, but it is likely that those excessive fees exceed many millions of dollars.

71.     In addition to the outrageous amounts of excessive fees paid to Agentra, $7,199,043.15 in Withheld Contributions was wrongfully transmitted to Defendants. A balance of $6,174,043 of the Withheld Contributions remains wrongfully withheld by Defendants from the commingled funds. These Withheld Contributions are clearly Plan assets as they represent funds necessary to pay covered medical and pharmaceutical claims as well as reasonable fees for Plan vendors and reinsurance premiums. Many of those unpaid plan vendors continued to service the Plan and the reinsurance carrier ensured that all covered claims were fully funded despite non-payment of premiums by the Plan.

72.     Upon information and belief, AWIS/AHCM paid over $2,000,000 from commingled funds which included Plan Assets to Mr. Lindsey for his personal financial benefit. Those payments have been retained by Mr. Lindsey in direct violation of ERISA and his fiduciary duties owed to the Plan.

## COUNT I:
## VIOLATIONS OF ERISA
## (AGAINST ALL DEFENDANTS)

73.    Plaintiffs hereby incorporate and re-allege the allegations in paragraphs 1 to 72 as if fully set forth herein.

74.    The terms of the Agreement and ERISA prohibited the actions by Defendants described herein.

75.    Provided under 29 U.S.C. §§ 1104(a)(1)(A), in pertinent part, a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." These fiduciary duties are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law."

76.    Under 29 U.S.C. § 1109(a), any fiduciary who breaches any of the responsibilities, obligations, or duties imposed by 29 U.S.C. §§ 1104(a)(1)(A) and (B) shall be personally liable to make good to a plan any losses to that plan resulting from each breach and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

02409810-1                           20

77.    Under 29 U.S.C. § 1105(a), a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with 29 U.S.C. § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

78.    Insurety exercised significant control and discretion over Plaintiffs-related ERISA Plan Assets and was thus a fiduciary over those Plan Assets pursuant to 29 U.S.C. § 1104.

79.    Agentra exercised significant control over Plaintiffs-related ERISA Plan Assets and was thus a fiduciary over those Plan Assets pursuant to 29 U.S.C. § 1104.

80.    Mr. Lindsey exercised significant control over Plaintiffs-related ERISA Plan Assets and was thus a fiduciary over those Plan Assets pursuant to 29 U.S.C. § 1104.

81.    Pursuant to 29 U.S.C. § 1104(a)(1), Defendants were required to discharge their duties with respect to the Plan and Plan participants solely in the

interests of the participants with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and of like aims.

82. As a direct and proximate result of Defendants' improper acts and/or omissions herein alleged, Defendants are liable to Plaintiffs for breaches, including, but not limited to, the Withheld Plan Contributions, by a fiduciary under 29 U.S.C. § 1104, by a co-fiduciary under 29 U.S.C. § 1105, and/or breach of fiduciary duty under 29 U.S.C. § 1109.

**COUNT II:**
**ERISA VIOLATIONS**
**(AGAINST MR. LINDSEY AND AGENTRA)**

83. Plaintiffs hereby incorporate and re-allege the allegations in paragraphs 1 to 72 as if fully set forth herein.

84. Unbeknownst to Plaintiff, Defendants Agentra and Mr. Lindsey were charging excessive, unreasonable, and/or redundant fees to Plan Participants for their own benefit and not the benefit of the Plan. Furthermore, Defendants Agentra and Mr. Lindsey sought to hide or secret this information from Plaintiffs.

85. By committing these actions, Defendants Agentra and Mr. Lindsey violated their fiduciary duties under ERISA of loyalty, prudence, no self-dealing, and charging excessive fees.

86.     Defendants Agentra and Mr. Lindsey are also parties in interest to the plan and violated their duty to follow contracted provisions and not bill excessive fees for their services.

87.     Defendants Agentra and Mr. Lindsey are also co-fiduciaries with each other and bear responsibility for each other's actions, as they each had full knowledge of the other's breach and/or participated in the breach with the other.

88.     Mr. Lindsey has personal liability for his breach as an individual and officer of Agentra under 29 U.S.C. § 1109.

89.     For these actions, Defendants Agentra and Mr. Lindsey should be disgorged of all excess profits, and those funds should be returned to the plan.

### COUNT III:
### BREACH OF FIDUCIARY DUTY
### (AGAINST ALL DEFENDANTS)

90.     Plaintiffs hereby incorporate and re-allege the allegations in paragraphs 1 to 72 as if fully set forth herein.

91.     Defendants exercised significant control over Plaintiffs-related ERISA Plan Assets and were thus a fiduciary over those Plan Assets pursuant to ERISA and under Georgia law.

92.     Defendants breached their fiduciary duties pursuant to ERISA and under Georgia law by commingling, misappropriating, mismanaging, diverting for

02409810-1     23

their own use, self-dealing, and otherwise failing to remit funds owed to the TPA for use to fund covered claims under the group health plan.

93.    Plaintiffs have been and continue to be damaged by Defendants' breach of their fiduciary duties pursuant to ERISA and under Georgia law by intermingling, self-dealing, and otherwise failing to remit funds, including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs.

## COUNT III:
## BREACH OF CONTRACT
### (AGAINST AGENTRA)

94.    Plaintiffs hereby incorporate and re-allege the allegations in paragraphs 1 to 72 as if fully set forth herein.

95.    Pursuant to the terms set forth and agreed upon in the DPG-Agentra Agreement, Plaintiffs and Agentra entered into a valid and enforceable contract, vesting performance obligations and duties in both parties.

96.    Plaintiffs performed the obligations vested in it by the terms of the DPG-Agentra Agreement.

97.    Agentra knowingly, intentionally, and materially breached its obligations under the DPG-Agentra Agreement, including, but not limited to, the performance obligations set forth in Schedule A by entering into an agreement with AWIS and actions otherwise in furtherance to withhold the Withheld Plan Contributions it knew were owed to Plaintiffs.

98.   As a direct and proximate result of Agentra's breach of the DPG-Agentra Agreement, Plaintiffs have suffered, and continue to suffer, damages, including, but not limited to, the Withheld Plan Contributions owed to Plaintiffs.

### COUNT IV:
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
#### (AGAINST INSURETY AND MR. PAGNANELLI)

99.   Plaintiffs hereby incorporate and re-allege the assertions in paragraphs 1 to 72 as if fully set forth herein.

100.   The DPG-Agentra Agreement was a contract between Plaintiffs and Agentra with which Insurety and Mr. Pagnanelli interfered with through their dealings, partnerships, and payments received from AWIS/ACHM.

101.   Insurety and Mr. Pagnanelli were strangers to the DPG-Agentra Agreement.

102.   Insurety and Mr. Pagnanelli maliciously caused Agentra to breach the DPG-Agentra Agreement by, at a minimum, receiving millions of dollars from Plan Participants and keeping those sums from a certain date forward instead of transmitting to Plaintiffs.

103.   Insurety and Mr. Pagnanelli's malicious procurement of Agentra's breach of the DPG-Agentra Agreement caused injury to Plaintiffs.

104.   At a minimum, the Withheld Plan Contributions establish the causal relationship between Defendants' tortious conduct and Plaintiffs' damages.

02409810-1                                          25

105.   Plaintiffs have been and continue to be damaged by Insurety and Mr. Pagnanelli's tortious actions in relation to Plaintiffs' contract with Agentra, of which both Insurety and Mr. Pagnanelli had knowledge.

## COUNT V:
### CIVIL CONSPIRACY PURSUANT TO O.C.G.A. § 51-12-30
(AGAINST ALL DEFENDANTS)

106.   Plaintiffs hereby incorporate and re-allege the assertions in paragraphs 1 to 72 as if fully set forth herein.

107.   The actions set forth herein with respect to the Withheld Plan Contributions constitute a common design by the Defendants to maliciously procure injury and harm to Plaintiffs by withholding and/or otherwise diverting funds from Plaintiffs.

108.   These actions include, but were not limited to, concerted actions by the Defendants to divert Plan Participants to sign up with separate and/or additional plans to divert funds away from Plaintiffs, including those actions described herein relating to Mr. Pagnanelli, Insurety, and AWIS/ACHM.

109.   These actions constitute Defendants coming to a mutual understanding that they would accomplish the unlawful design that resulted in significant financial injury and harm to Plaintiffs by receiving millions of dollars from Plan Participants and keeping all of that money from a certain date forward instead of transmitting to Plaintiffs.

02409810-1

26

110.   Plaintiffs have been and continue to be damaged by Defendants' conspiratorial actions under Georgia law by intermingling, self-dealing, and otherwise failing to remit funds, including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs.

## COUNT VI:
### FRAUD AND DECEIT
### (AGAINST ALL DEFENDANTS)

111.   Plaintiffs hereby incorporate and re-allege the allegations in paragraphs 1 to 72 as if fully set forth herein.

112.   As set forth herein, Defendants made a number of knowing misrepresentations to Plaintiffs regarding the Withheld Plan Contributions. For example, on information and belief, the Defendants made material misrepresentations and material omissions regarding the agreements between and among each other and AWIS/ACHM.

113.   Each Defendant received millions of dollars from Plan Participants and kept all of that money from a certain date forward instead of transmitting to the TPA as each Defendant had an obligation to transmit.

114.   Each Defendant made representations to Plaintiffs that the above-described funds would be transmitted to the TPA as was done previously.

115.   Upon information and belief, each Defendant's representations to Plaintiffs that the above-described funds would be transmitted to the Plaintiffs as

02409810-1                                27

was done previously was made with knowledge that the funds would not be transmitted to Plaintiffs.

116.   As set forth herein, Defendants also made material misrepresentations and omissions regarding the payments had, received, and transmitted relating to the Plan and Plan Participants, including, but not limited to, the Withheld Plan Contributions.

117.   The Defendants made material factual misstatements to Plaintiffs regarding their actions, as described herein.

118.   The Defendants concealed material facts from Plaintiffs regarding their actions, as described herein.

119.   Defendants made those material factual misstatements and chose not to disclose those concealed material facts in order to mislead and deceive Plaintiffs.

120.   Defendants made those material factual misstatements and chose not to disclose those concealed material facts in order to hide their self-dealing and violations of ERISA.

121.   Plaintiffs reasonably believed and relied on the factual misstatements and had no reason to know of or seek to discover the concealed facts.

122.   Plaintiffs reasonably expected and relied on the Defendants to act truthfully with the actions described herein.

123.    The facts and allegations set forth herein demonstrate the Defendants have acted with fraud and deceit toward Plaintiffs to Defendants' benefit and to Plaintiffs' resulting injury.

124.    Plaintiffs have suffered actual damages in an amount to be determined at trial as a result of said conduct.

125.    Plaintiffs are entitled to recover from Defendants the full value of those sums once they are determined.

126.    Each of the Defendants has acted in bad faith, has been stubbornly litigious and has caused Plaintiffs unnecessary trouble and expense, entitling Plaintiffs to an award of attorney's fees, including, but not limited to, those awardable pursuant to 29 U.S.C. § 1132(g).

127.    Each Defendant has acted maliciously and with conscious indifference toward Plaintiffs with the intent to cause harm, thereby entitling Plaintiffs to recover a separate judgment for exemplary damages against each Defendant pursuant to O.C.G.A. § 51-12-5.1 as the jury in its enlightened conscience shall determine.

**COUNT VII:**
**UNJUST ENRICHMENT**
**(AGAINST ALL DEFENDANTS)**

128.    Plaintiffs hereby incorporate and re-allege the allegations in paragraphs 1 to 72 as if fully set forth herein.

129. Defendants had no right to, or title in, the Withheld Plan Contributions and were expressly prohibited from using the Withheld Plan Contributions and were expressly obligated to hold the Withheld Plan Contributions in trust for Plaintiffs.

130. Each Defendant benefitted from the egregiously excessive fees which Agentra and AWIS charged to the Plan, and paid to themselves. These were many times greater than reasonable and customary standard fees for the services provided by Agentra and AWIS, and were concealed from the Plan's sponsor.

131. Each Defendant received millions of dollars from Plan Participants and kept those sums from a certain date forward instead of transmitting to Plaintiffs as each Defendant had a fiduciary obligation to transmit.

132. The Defendants benefited from the use of the Withheld Plan Contributions when they used them to acquire new commissions, otherwise pursue different business ventures, and/or to fund the operating expenses of their businesses.

133. The Defendants benefitted from the use of the Withheld Plan Contributions when they failed to transfer the Withheld Plan Contributions to Plaintiffs.

134. Plaintiffs were harmed by the Defendants' use of the Withheld Plan Contributions and the withholding of the Withheld Plan Contributions.

135.    Plaintiffs are entitled to damages arising from injuries sustained as a result of Defendants' benefitting from the use of the Withheld Plan Contributions when they failed to transfer the Withheld Plan Contributions to Plaintiffs.

## COUNT VIII:
## BREACH OF LEGAL DUTY PURSUANT TO O.C.G.A. § 51-1-6
### (AGAINST ALL DEFENDANTS)

136.    Plaintiffs hereby incorporate and re-allege the assertions in paragraphs 1 to 72 as if fully set forth herein.

137.    Defendants' control and discretion in connection with the funds associated with the Benefits Plan and Plan Participants gave them a fiduciary duty pursuant to 29 U.S.C.S. § 1002 (21) (A).

138.    Each Defendant received millions of dollars from Plan Participants and kept those sums from a certain date forward instead of transmitting to Plaintiffs as each had an obligation to transmit.

139.    In the event it is found that no cause of action is given in express terms for Defendants' actions described herein, Georgia law otherwise required Defendants to perform an act for the benefit of Plaintiffs by transmitting the Withheld Plan Contributions to Plaintiffs and not otherwise converting the funds for their own use and benefit.

140.    In the event it is found that no cause of action is given in express terms for Defendants' actions described herein, Georgia law otherwise required

Defendants to refrain from intermingling, self-dealing, and otherwise failing to remit funds, including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs.

141. Defendants breached a legal duty owed to Plaintiffs by failing to perform acts they were required to perform to benefit Plaintiffs or by failing to refrain from performing acts which injured Plaintiffs by not transmitting the Withheld Plan Contributions to Plaintiffs and not otherwise converting the funds for their own use and benefit.

142. Defendants breached a legal duty owed to Plaintiffs by failing to refrain from intermingling, self-dealing, and otherwise failing to remit funds, including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs.

143. Plaintiffs have suffered and continue to suffer damages by Defendants breaching these legal duties under Georgia law through intermingling, self-dealing, and otherwise failing to remit funds, including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs.

**COUNT IX:**
**MONEY HAD AND RECEIVED**
**(AGAINST AGENTRA)**

144. Plaintiffs hereby incorporate and re-allege the assertions in paragraphs 1 to 72 as if fully set forth herein.

145.   Plaintiffs had privity of contract, express or implied, with Agentra concerning the funds needed to pay for the medical expenses of the participants of the plan that Defendants commingled, self-dealt, and otherwise failed to remit monthly contributions, including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs.

146.   Agentra benefitted from the egregiously excessive fees which Agentra and AWIS charged to the Plan, and paid to themselves.  These were many times greater than reasonable and customary standard fees for the services provided by Agentra and AWIS, and were concealed from the Plan's sponsor.

147.   Agentra received millions of dollars from Plan Participants and kept those sums from a certain date forward instead of transmitting to Plaintiffs as each Defendant had an obligation to transmit.

148.   Upon realizing that Defendants were no longer properly transmitting the funds paid by Plan Participants to Plaintiffs, Plaintiffs demanded Agentra repay such funds.

149.   Agentra refused Plaintiffs' demands and obligations for repayment of funds that Defendants had not properly transmitted.

150.   Therefore, Agentra received funds needed to pay for the medical expenses of the participants of the plan that Agentra failed to remit to Plaintiffs,

including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs that in equity and good conscience Agentra should not be permitted to keep.

**COUNT X:**
**CONVERSION**
**(AGAINST ALL DEFENDANTS)**

151.   Plaintiffs hereby incorporate and re-allege the assertions in paragraphs 1 to 72 as if fully set forth herein.

152.   Plaintiffs had a right to the funds needed to pay for the medical expenses of the participants of the plan that Defendants commingled, self-dealt, and otherwise failed to remit funds, including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs.

153.   Defendants have actual possession of the funds needed to pay for the medical expenses of the participants of the plan that Defendants commingled, self-dealt, and otherwise failed to remit funds, including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs. While those medical expenses of the participants of the plan were funded despite the conversion of Defendants, the expenses were paid solely through Plaintiffs' efforts, notably through cooperation with and commitments to pursue these claims made to several vendors to the Plan.

154.   Each Defendant received millions of dollars from Plan Participants and kept those sums from a certain date forward instead of transmitting to Plaintiffs as each Defendant had an obligation to transmit.

02409810-1                                        34

155.   Upon realizing that Defendants were no longer properly transmitting the funds paid by Plan Participants to Plaintiffs, Plaintiffs demanded such transmission occur.

156.   Defendants refused to return to Plaintiffs the funds needed to pay for the medical expenses of the participants of the plan that Defendants commingled, self-dealt, and otherwise failed to remit funds, including, but not limited to, the Withheld Plan Contributions, owed to Plaintiffs.

## COUNT XII:
### ATTORNEYS' FEES
### (AGAINST ALL DEFENDANTS)

157.   Plaintiffs hereby incorporate and re-allege the allegations in paragraphs 1 to 72 as if fully set forth herein.

158.   Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense.

159.   By reason of the foregoing, Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and expenses from the Defendants pursuant to O.C.G.A. § 13-6-11 and 29 U.S.C. § 1132(g).

## COUNT XII:
### PUNITIVE DAMAGES
### (AGAINST ALL DEFENDANTS)

160.   Plaintiffs hereby incorporate and re-allege the allegations in paragraphs 1 to 72 as if fully set forth herein.

161. Defendants' conduct, as described in detail herein, was undertaken with the specific intent to cause economic harm to Plaintiffs.

162. Defendants' conduct, as described in detail herein, was outrageous, willful, wanton, and/or reckless.

163. Defendants' conduct, as described in detail herein, demonstrates a willful, wanton, and/or reckless disregard of the rights of Plaintiffs.

164. As a consequence, Plaintiffs are entitled to an award of punitive damages in accordance with Plaintiffs' non-ERISA claims set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant Plaintiffs the following relief:

1. That the Court order such equitable relief as is deemed just and proper.

2. That the Court enter judgment in favor of Plaintiffs against Defendants in an amount sufficient to compensate Plaintiffs for the damages suffered as a result of Defendants' actions.

3. That Plaintiffs recover from Defendants punitive or additional damages based on Defendants' fraudulent misrepresentations and concealments, as provided by O.C.G.A. §§ 51-12-1, 51-12-5.1, or other applicable law.

02409810-1                                36

4.     That Plaintiffs recover from Defendants reasonable and necessary attorneys' fees and expenses incurred in connection with this action, as provided by O.C.G.A. §§ 13-6-11, 13-6-9, 51-12-7, 29 U.S.C. § 1132(g), or other applicable law.

5.     That Plaintiffs be awarded prejudgment and post-judgment interest, as provided by O.C.G.A. § 13-11-7, or other applicable law.

6.     Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiffs demand trial by jury on all claims and issues so triable.

Respectfully submitted this 22nd day of September, 2022.

*/s/Jonathan D. Crumly*
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
Allen W. Nelson
Georgia Bar No. 537680
anelson@taylorenglish.com
Daniel H. Weigel
Georgia Bar No. 956419
dweigel@taylorenglish.com

**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, GA  30339
Phone: (678) 336-7257
Fax: (770) 434-7376

*Counsel for Plaintiffs Consumer Data Partners LP, successor by merger to Data Partnership Group, LP, as Plan Sponsor and the Data Partnership Group, LP Health and Welfare Benefits Plan*

02409810-1                                              37

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Complaint has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Jonathan D. Crumly
Jonathan D. Crumly